## IN UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MARYLAND

| | |
|---|---|
| ANDREW PLUSH )<br><br>48646 St. James Church Rd. )<br>Lexington Park, MD 20653 )<br><br>*Plaintiff*, )<br>)<br>vs. )<br>)<br>SERVTECH INC. )<br>)<br>Patuxent River Commissary )<br>22155 Cuddihy Rd., Building 2173 )<br>Patuxent River, MD 20670 )<br>)<br>*Defendant*. )<br>_____) | Civil Action No.<br><br><br>**Jury Demanded** |

## COMPLAINT

**COMES NOW**, the Plaintiff Andrew Plush, by and through undersigned counsel, with his COMPLAINT against Defendant ServTech Inc. (hereinafter "ServTech" or "Defendant") for the cause of action stated below:

## PARTIES

1.      Plaintiff Andrew Plush ("Plaintiff" or "Mr. Plush") is a resident of Maryland, and was an employee of the ServTech, working in the Commissary at the Patuxent River United States Navy Base.  He began his employment with ServTech on or about March 1, 2020, when it took over the service contract for the Commissary from the Center for Life Enrichment, the previous contract holder.  Mr. Plush was terminated from his employment on or about November 14, 2020.  Mr. Plush is autistic, and was employed as part of a federal program designed to provide job opportunities for people with development disabilities.

2.      Defendant ServTech is an Arizona company, licensed to do business in Maryland as of March of 2020, with a principal place of business at the Commissary on the United States Navy Base in Patuxent River, MD.

## JURISDICTION

3.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as it asserts claims that arise under the Constitution, laws, or treaties of the United States, specifically the Americans with Disabilities Act of 1967, 42 U.S.C. 126, § 12101 *et seq.*

## VENUE

4.      Venue is proper in the Southern District of Maryland under 28 U.S.C. § 1331 and 29 U.S.C. § 1402 substantially all the acts and omissions that give rise to this complaint occurred in the State of Maryland.  Further, this Court has jurisdiction over this Complaint because a question of federal law is presented.  28 U.S.C. §§ 1331 (federal question).  Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## EXHAUSTION OF REMEDIES

5.      Plaintiff has exhausted all administrative remedies.

6.      On or about February 18, 2020, Plaintiff timely filed a formal Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") for discrimination based on failure to reasonably accommodate his disability.  *See* EX 1

7.      On or about May 6, 2021, the EEOC issued a Dismissal and Notice of Right to Sue, giving Plaintiff ninety (90) days to file a civil action.  *See* EX 2.

8.      Plaintiff now timely files this action pursuant to federal law.

## RELEVANT FACTS

9.      Plaintiff is a moderately-functioning autistic young man, who was successfully employed for approximately three (3) years as a night stocker at the Commissary (the "Comm.") at the United States Navy Base at Patuxent River, Maryland (hereinafter "Pax River").

10.     During the first three years of his employment at the Comm., Plaintiff was employed by The Center for Life Enrichment (hereinafter "The Center"), a private company that held the operations contract for the Pax River Comm.

11.     The Center employed Plaintiff as part of the federal AbilityOne Program and SourceAmerica program.  Both programs are designed to provide work opportunities for persons with serious physical and/or developmental disabilities, by providing jobs on federal installations and properties through organizations like The Center.

12.     The Center is a contract provider that was Medicaid certified to be able to assist employees with developmental disabilities, such as Plaintiff.

13.     The Center provided Plaintiff with a job coach that assisted him to become acclimated to the job and learn and develop the habits, and repetitive movements that allowed him to be productive in the job.

14.     In March of 2020, ServTech, another AbilityOne and SourceAmerica program contractor, took over the contract for the Pax River Comm. Unlike The Center, it was not Medicaid certified to pay for a job coach at all times relevant to the claim.

15.     At that time of transition from The Center to ServTech, Plaintiff was working productively, and paid an hourly wage of approximately $15.50/hour.

16.     When ServTech took over the contract, it posted all the jobs formerly held by The Center. As can be seen at EX 3, Mr. Plush's position was posted as being paid hourly at the rate of $18.34 per hour.

17.     The job coach that was provided to Mr. Plush but The Center, stayed on the job and continued to provide services to Mr. Plush after ServTech took over.  Mr. Plush had no reason to believe that the job coach services would terminate, so he had no reason to ask for an accommodation.

18.     Autism is not a single disability, but a condition that manifests on a spectrum of mental and physical impairments.  Every autistic person is different, and is affected differently by the condition.

19.     Mr. Plush's autism substantially impairs his ability to comprehend instructions, to engage in higher executive mental functioning, to adapt to new work procedures or policies, and to process the implications of counseling or admonition without assistance.

20.     Mr. Plush's autism made it impossible for him to understand legal concepts like "reasonable accommodation" or to know what to ask for, or from whom, to help him succeed at his job.

21.     Moreover, because Mr. Plush's job coach continued on the job, assisting him, he had no reason to believe that he needed additional or new accommodation.

22.     In direct contravention to the job posting at EX 3, ServTech decided that it wanted its employees to be compensated on a per-piece rate, rather than an hourly rate, which in turn increased the productivity demand and pressure on its employees.

23.     This was a substantial change in the operation of the Comm, that would require time for someone with Plaintiff's developmental challenges to adjust to.

24.     Unlike The Center, ServTech did not factor in the needs of those with developmental disabilities when making the change.

25.     Mr. Plush was continuing to work with his job coach to improve the speed and accuracy of his work, which showed continuous improvement until his coach left her employment for another opportunity in October of 2020.

26.     Immediately thereafter, on or about November 7, 2020, ServTech began disciplining Plaintiff, writing him up for an "infraction," because his work failed to meet ServTech's standard. *See* EX 4.

27.     The November 7, 2020, disciplinary action, was the first disciplinary write-up Plaintiff received during the entirety of his employment with ServTech.

28.     It bears repeating that Mr. Plush's autism would make it all but impossible for him to process, understand and modify his behavior based on written discipline.

29.     Furthermore, Mr. Plush's autism would make it impossible for him to ask for a reasonable accommodation, or to meaningfully participate in any "interactive process," to assess the viability of an accommodation.

30.     Defendant was aware that Mr. Plush's mother, Windy Plush (hereinafter "Ms. Plush"), acted as his advocate and in all matters related to his employment, and had engaged with Ms. Plush several times throughout his employment.

31.     Defendant was also aware that Mr. Plush took all written documents provided by his employer to Ms. Plush, so that she could analyze them and understand how they affected Andrew, and could advocate on his behalf of explain their meaning to him.

32.     Unlike with other documents, Defendant did not provide Mr. Plush with a copy of the first disciplinary write-up to take to his mother.  So, she remained unaware of the 180-degree change in ServTech's posture towards Plaintiff.

33.     Three days after receiving the first disciplinary write up, ServTech wrote Mr. Plush up again on November 10, 2020, again for failing to meet ServTech's productivity standard.  This disciplinary action took place in such proximity to the first write up, it left no meaningful time for Mr. Plush to improve his performance.  *See* EX 5. [1]

34.     Again, Mr. Plush was not given a copy of the second disciplinary write-up to take to Ms. Plush, and would have been unable to process its meaning or to understand what he needed to do differently to avoid further discipline.

35.     Three days after receiving the second disciplinary write-up, ServTech terminated Plaintiff, on or about November 14, 2020.  *See* EX 6.

36.     The three write ups from ServTech were pretext for discrimination, and not intended in any way to assist Mr. Plush to improve his performance.

37.     ServTech did not, in any meaningful way, permit Mr. Plush to engage in an "interactive process" to seek or obtain a reasonable accommodation of his disability.

---

[1] Note that the signature on Exhibit 5 for the employee is not the signature of Andrew Plush.  Plaintiff asserts and intends to develop a record proving that ServTech falsified documents to justify its termination of Plaintiff.

38.     By not providing Ms. Plush with any information regarding Andrew's discipline, or notice that ServTech intended not to continue providing Plaintiff with a job coach, ServTech deprived Ms. Plus of the ability to advocate for her disabled son, and for him to benefit from the protections of the ADA.

39.     The "progressive discipline" issued by ServTech was inaccurate, unfair, provided in a way that prohibited Mr. Plush from understanding it, done away from Ms. Plush so she could not intervene on his behalf, and was pretext for animus and an intent to discriminate against, and avoid having to accommodate Mr. Plush.

## CAUSES OF ACTION

### COUNT I
(*Failure to Reasonably Accommodate a Disability*)

40.     Plaintiff fully incorporates the assertions in all of the previous paragraphs as if fully restated herein.

41.     Plaintiff suffered from a developmental disability that required the type of accommodation that assisted him to learn new procedures, practices and job demands through practice and repetition.

42.     Defendant was aware of Plaintiff's disability, and his need for reasonable accommodation.

43.     Defendant was also aware that Plaintiff was not capable of asking for that accommodation himself, and was not capable of processing the written or verbal discipline from his supervisors for failing to meet ServTech's arbitrary standards.

44.     Defendant failed to engage in any meaningful "interactive process," because it failed to interact with Ms. Plush, the person who could speak for Plaintiff and understand what was happening and what needed to be done to help him succeed.

45.     Defendant failed to engage in any meaningful "interactive process" because it used a progressive discipline process that only agitated and stressed Plaintiff out, was hidden from his advocate and representative, and had no hope of improving his performance because it gave him no time to show improvement.

46.     Had Plaintiff been given a little more time to continue his improvement, he would have attained ServTech's production standards.

47.     ServTech violated the ADA by failing to reasonably accommodate Plaintiff's developmental, analytical and comprehension disabilities.

48.     Plaintiff suffered mental anguish, stress and anxiety as a direct and proximate cause of Defendant's failures.

49.     Plaintiff's loss of employment was particularly devastating to his self-esteem, and future job prospects, as employment for those with Plaintiff's degree of disability are very few.

50.     Plaintiff's termination was unlawful and discriminatory, in violation of Defendant's obligations under the ADA.

51.     Plaintiff therefore seeks damages in an amount of not less than $250,000, as well as costs, fees, attorney's fees, interest, and all other remedies deemed appropriate by this Court.

COUNT II<br>(<em>Retaliation</em>)

52.     Plaintiff fully incorporates the assertions in all of the previous paragraphs as if fully restated herein.

53.     Defendant knew, or should have known, that Plaintiff's disability made it impossible for him to effectively advocate for himself.

54.     Defendant knew, or should have known, that Plaintiff could not meaningfully participate in the interactive process contemplated and mandated by the ADA, to assess and provide Plaintiff with the reasonable accommodation he needed to be successful in the job.

55.     When Plaintiff's job coach left in October, ServTech decided to immediately retaliate against Plaintiff, and push him out of the business, because the of accommodation that he needed, and that would have been asked for by this mother if she had been given time to do so.

56.     On or about November 14, 2020, ServTech terminated Plaintiff, instead of either providing the accommodation his mother would have asked for on his behalf, or more time for Plaintiff to adjust to the work demands.

57.     This termination was an adverse employment action, and one that ServTech could foresee would be particularly distressing to Plaintiff because of his developmental disability.

58.     Defendant's acceleration of discipline, and termination of Mr. Plush, was in retaliation for Plaintiff's need of a job coach, which was an expense ServTech did not want.

59.     Defendant's accelerated termination of Plaintiff was based on false and misleading evaluation of his performance, was never intended to allow are assist him to improve, and was pretext for discrimination and retaliation.

60.     Defendant's actions constitute a violation of the prohibition on retaliation in the ADA.

61.     Plaintiff therefore seeks damages in an amount of not less than $250,000, plus costs, fees, attorney's fees, interest, and all other remedies deemed appropriate by this Court.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court:

a.   Provide Plaintiff with applicable backpay, benefits and interest;

b.  Provide Plaintiff with a clean record of any adverse/negative personnel actions/records, including all adverse/negative performance appraisals, disciplinary records, and substitute accurate records on Plaintiff's performance

c.  Award Plaintiff past pecuniary compensatory damages in their proven amount;

d.  Award Plaintiff future pecuniary and nonpecuniary compensatory damages in a proven amount not to exceed lawful amounts provided by law.

e.  Award Plaintiff reasonable attorney's fees and costs;

f.  Award such other and further relief as this Honorable Court deems just and proper.

g.  Order Defendant to institute a policy and procedure to be implemented with respect to reasonable accommodation of persons with developmental disabilities.

h.  Order Defendant to develop and implement Equal Employment Opportunity training for managing persons with developmental disabilities for the supervisory and management staff at issue herein.

i.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,

*/s/ Donald M. Temple*
Donald M. Temple
Temple Law Offices
1310 L St., NW
Suite 750
Washington DC 20005
202-628-1101(O)
202-217-2774 (F)
dtemplelaw@gmail.com
*Counsel for Plaintiff*